**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leonard Yazzie, ) | CIV 08-8059-PCT-MHB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Michael J. Astrue, Commissioner of Social ) Security, ) | |
| Defendant. ) | |

Pending before the Court is Plaintiff Leonard Yazzie's appeal from the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits and Supplemental Security Income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On April 16, 2004, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383(d), alleging disability since July 1, 2002. (Transcript of Administrative Record ("Tr.") at 51-53, 176-78.) His applications were denied both initially and on reconsideration. (Tr. at 37-39, 41-43, 180-87.) Following a timely request from Plaintiff, a hearing was held before Administrative Law Judge ("ALJ") Donald R. Jensen, on July 25, 2006. (Tr. at 262-303.) After taking the matter under advisement, the ALJ denied Plaintiff's claims on December 15, 2006, finding Plaintiff not disabled. (Tr. at 17-26.) Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council.

(Tr. at 11-16.) On March 14, 2008, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. at 5-7.)

Plaintiff then commenced the instant action for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). On October 31, 2008, Plaintiff moved for summary judgment. (Doc. #22.) Defendant filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment on November 25, 2008. (Doc. #24.)

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

> (1) determine whether the applicant is engaged in "substantial gainful activity";
>
> (2) determine whether the applicant has a medically severe impairment or combination of impairments;
>
> (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
>
> (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § 404.1520). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

The ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. (Tr. at 22.) The ALJ determined that Plaintiff had the following impairments: disorders of the back including degenerative disc disease of the lumbar spine. (Tr. at 22-23.) He considered these impairments severe, but not severe enough to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 23.) After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of light and sedentary work.[1] (Tr. at 23.) Plaintiff is able to lift 20 pounds on an occasional basis and lift 10 pounds frequently. (Tr. at 23.) Plaintiff is able to stand and/or walk for a total of six hours in an eight-hour workday and for up to 30 minutes at a time. (Tr.

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. See 20 C.F.R. § 404.1545(a).

at 23.) Plaintiff is able to sit for about six hours during an eight-hour workday and for up to one hour at a time. (Tr. at 23.) Plaintiff should climb, balance, kneel, crouch, and crawl on no more than an occasional basis. (Tr. at 23.) Plaintiff has a limited education and is able to communicate in English. (Tr. at 24.) The ALJ determined that Plaintiff was unable to perform any of his past relevant work, but concluded that, notwithstanding his impairments and considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 24-25.) Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. at 25-26.)

## IV. DISCUSSION

Plaintiff moves for summary judgment contending that the ALJ erred by: (1) failing to specify a significant number of jobs in the national economy that Plaintiff could perform; (2) noting only numbers of jobs available in the national economy; (3) failing to include Plaintiff's limited ability to communicate in English in the hypothetical questions posed to the vocational expert; (4) failing to make a specific residual functional capacity finding regarding Plaintiff's ability to sit, walk, and or stand for prolonged periods of time; and (5) determining that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

**A.    The ALJ's Finding Regarding the Significant Number of Jobs**

Plaintiff first argues that the ALJ erred by failing to specify a significant number of jobs in the national economy that Plaintiff could perform. Specifically, Plaintiff claims that the ALJ did not determine whether the number of jobs available was a substantial number and appeared to only use the numbers provided by the vocational expert. Plaintiff states that there is no indication how the ALJ arrived at his conclusion regarding a significant number of jobs.

There are two ways for the Commissioner "to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational

1 | Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2." Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); see Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). However, the Commissioner cannot rely on the Grids when the Grids fail to adequately take into account claimant's abilities and limitations; rather, the Commissioner must rely on the testimony of a vocational expert. See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Osenbrock, 240 F.3d at 1162. Furthermore, hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, see Thomas, 278 F.3d at 956; Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001), and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (quoting DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)); Lewis, 236 F.3d at 517.

In determining that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, the ALJ found that Plaintiff's "ability to perform all or substantially all of the requirements of [a limited range of light and sedentary] work has been impeded by additional limitations." (Tr. at 25.) Thus, "[t]o determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity." (Tr. at 25.)

The ALJ, specifically, asked the vocational expert what jobs an individual could perform if the individual was 45 years old; with a 10th grade education; had Plaintiff's work history; could perform a range of light work; could lift 20 pounds occasionally and 10 pounds frequently; could stand or walk six hours of an eight-hour day; sit for six hours of an eight-hour day but must alternate sitting and standing; could only occasionally use lower extremities for foot controls; could only climb ramps, stairs, ladders, or scaffolds occasionally; could occasionally stoop, kneel, crouch, or crawl; and could balance frequently.

1  (Tr. at 298-99.) The expert responded that an individual with such limitations could perform
2  60 percent of the unskilled sedentary and light work jobs found in the Dictionary of
3  Occupational Titles. (Tr. at 299.) Three examples given by the vocational expert of light or
4  sedentary occupations within this 60 percent included: call-out operator (unskilled sedentary
5  – 218,000 jobs in the national economy); surveillance systems monitor (unskilled sedentary
6  – 150,000 jobs in the national economy); and telephone quotation clerk (unskilled sedentary
7  – 150,000 jobs in the national economy). (Tr. at 299-300.) The ALJ then asked the expert
8  how these jobs might be reduced if the individual was also limited to 30 minutes of standing
9  at a time and 1 hour of sitting at a time. (Tr. at 300.) The expert responded that there would
10 be a 30 percent reduction in the number of jobs previously cited. (Tr. at 300.)

11 Based on the vocational expert's testimony, the ALJ concluded that, considering
12 Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff "has
13 been capable of making a successful adjustment to other work that exists in significant
14 numbers in the national economy." (Tr. at 25.) Therefore, the ALJ stated that a finding of
15 "not disabled" is appropriate. (Tr. at 25.)

16 Although the Ninth Circuit has never clearly established the minimum number of jobs
17 necessary to constitute a "significant number" of jobs within the meaning of Step Five, <u>see</u>
18 <u>Barker v. Secretary of Health & Human Serv.</u>, 882 F.2d 1474, 1478-79 (9th Cir. 1989), the
19 vocational expert testified that an individual with Plaintiff's same limitations could perform
20 60 percent of the unskilled sedentary and light work jobs found in the Dictionary of
21 Occupational Titles. The vocational expert identified three examples of light or sedentary
22 occupations within this 60 percent, which alone totaled 518,000 jobs nationally that Plaintiff
23 can perform. Such numbers clearly constitute a significant number of jobs. <u>See id.</u>;
24 <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1042-43 (9th Cir. 2008). The Court finds the same
25 result even considering a 30 percent reduction in the number of occupations in accordance
26 with the vocational expert's testimony regarding Plaintiff's ability to work if further limited
27 to 30 minutes of standing at a time and one hour of sitting at a time.
28

Thus, the Court finds that substantial evidence supports the ALJ's Step Five determination that Plaintiff is not disabled.

**B.  The ALJ's Reliance on the Number of Jobs Available in the National Economy**

Plaintiff contends that the ALJ erred by noting only numbers of jobs available in the national economy. Plaintiff argues that the ALJ should have considered the number of jobs available for both the region and nation since he resides in an extremely remote area of the Navajo Reservation.

The Social Security Act does not require the ALJ to find that significant numbers of jobs exist in both the regional and national economies. See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1566(a), 416.966(a). The Act defines work that exists in the national economy as that which exists in *either* the region where such individual lives or in several other regions of the country. See id.

Further, a finding that a significant number of jobs exist in the national economy may be found regardless of whether such work exists in the immediate area where the Plaintiff lives. See id.; Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986). The Commissioner need not consider the geographical area where a plaintiff lives in making the determination of whether a significant number of jobs exist, as it is the number of jobs in the national economy and not their geographic location which is ultimately at issue. See Barker, 882 F.2d at 1479-80; Martinez, 807 F.2d at 775; see also Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999).

Thus, Plaintiff's argument that the ALJ had a burden to elicit the number of local jobs is unpersuasive. The Court, therefore, finds that the ALJ's decision that a significant number of jobs exist in the national economy is supported by substantial evidence.

**C.  The ALJ's Consideration of Plaintiff's Ability to Speak English**

Plaintiff alleges that his ability to communicate in English is impaired and that the ALJ failed to include this limitation in the hypothetical questions posed to the vocational expert.

1    The ability to speak English is a vocational factor to be considered in determining Plaintiff's ability to perform a significant number of jobs in the national economy. See 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5). In his decision, the ALJ made an express finding that Plaintiff could communicate in English. (Tr. at 24.) Plaintiff, however, argues that his "ability to communicate clearly and effectively is somewhat impaired."

The Commissioner considers whether an individual is *unable* to speak, read, or understand English, not whether they have difficulty in doing so. See 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5); 20 C.F.R. Part 404, Subpart P, Appendix 2, 201.00(h), (i). The record in this case supports neither conclusion.

Plaintiff circled "Yes" in response to the question of whether he could read and write English on May 20, 2004. (Tr. at 68.) Plaintiff chose "Yes" even though the other options of "No" and "A Little Bit" were available on the form. (Tr. at 68.) Further, Plaintiff testified on July 25, 2006, that he started speaking English when he went to boarding school. (Tr. at 274.) While Plaintiff testified that English was his second language, he also stated that he could read and understand newspaper articles, and write letters. (Tr. at 273-74.) Moreover, the record demonstrates that Plaintiff testified in English at the hearing for almost an hour without an interpreter. (Tr. at 262-303.) Although the ALJ noted that Plaintiff spoke with an accent, neither the ALJ nor any of the parties present at the hearing requested clarification of a question or an answer due to any language barrier. (Tr. at 274, 262-303.)

Accordingly, based on the record supporting Plaintiff's ability to speak English, the Court finds that the ALJ's decision not to include Plaintiff's ability to speak English as a limitation on Plaintiff's ability to perform other work was proper. The ALJ's finding that Plaintiff could communicate in English is supported by substantial evidence.

**D.     The ALJ's Consideration of Plaintiff's Ability to Sit, Stand, and Walk**

Plaintiff asserts that the ALJ erred by failing to make a specific residual functional capacity finding regarding his ability to sit, walk, and or stand for prolonged periods of time.

The ALJ, after consideration of the entire record, concluded that Plaintiff retained the residual functional capacity to perform a limited range of light and sedentary work. (Tr. at 23.) Specifically, he found that Plaintiff is able to lift 20 pounds on an occasional basis and lift 10 pounds frequently. (Tr. at 23.) Plaintiff is able to stand and/or walk for a total of six hours in an eight-hour workday and for up to 30 minutes at a time; and, Plaintiff is able to sit for about six hours during and eight-hour workday and for up to one hour at a time. (Tr. at 23.) The ALJ additionally determined that Plaintiff should climb, balance, kneel, crouch, and crawl on no more than an occasional basis. (Tr. at 23.)

In deciding Plaintiff's residual functional capacity, the ALJ first addressed Plaintiff's subjective allegations. (Tr. at 23.) During the course of the hearing, Plaintiff testified that he suffers from chronic, debilitating low back pain which radiates down his left leg to his thigh and knee. (Tr. at 23.) On a scale of 1 to 10, Plaintiff rated his pain as being an eight. (Tr. at 23.) Plaintiff testified that exertional activity aggravates his pain and claimed that he is not able to lift more than ten pounds occasionally, walk more than one block, stand more than 30 minutes at one time, or sit more than one hour at a time. (Tr. at 23.)

The ALJ found, however, that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible and, as such, did not give full weight to Plaintiff's testimony with regard to his physical limitations. (Tr. at 23-24.) The ALJ particularly noted the inconsistencies between Plaintiff's activities of daily living and Plaintiff's testimony as to his ability. (Tr. at 24.) For example, the ALJ identified that Plaintiff testified that during the day he is the primary caretaker of small children. (Tr. at 24.) Plaintiff testified that he is responsible for dressing, feeding, putting to bed, and picking up after these children. (Tr. at 24.) Plaintiff further stated that he takes the children to the park, vacuums and sweeps around the house, and waters the lawn by hand. (Tr. at 24.) The ALJ found this testimony consistent with Plaintiff's prior statements that he is able to perform light household work. (Tr. at 24.)

In his decision, the ALJ also found that Plaintiff testified that he is able to drive from his home in Sandy, Utah to Arizona to visit his brother, and that he is able to drive for "about

two hours before he must stop and walk around ... ." (Tr. at 24.) When in Arizona, Plaintiff helps take care of his brother's house and horses. (Tr. at 24.) The ALJ found this evidence consistent with a functional history report dated June 14, 2006, which demonstrated that Plaintiff is able to sit continuously for up to two hours, stand continuously for up to 30 minutes, drive continuously for two hours, and walk continuously for 30 minutes. (Tr. at 24.) In that same report, Plaintiff stated that his lifting limit is 20 pounds. (Tr. at 24.)

The ALJ also considered the medical opinions of the State agency medical consultant, Dennis Taggart, M.D., and consultative physicians, Blair F. McGirk, M.D. and Gabriel L. Bonilla, M.D., in determining Plaintiff's residual functional capacity. (Tr. at 24.)

Dr. Taggart reviewed all relevant medical evidence and assessed Plaintiff's residual functional capacity on May 20, 2004. (Tr. at 104-113.) Dr. Taggart recorded that Plaintiff had a light residual functional capacity and stated that Plaintiff may need to "change positions to alleviate pain." (Tr. at 112.) Dr. Taggart further indicated that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and stand and/or walk about six hours in an eight-hour workday. (Tr. at 105.) Dr. Taggart also found that Plaintiff could sit about six hours in an eight-hour workday with the requirement that he be allowed to periodically alternate sitting and standing to relieve pain or discomfort. (Tr. at 105.) Dr. Taggart stated that Plaintiff was limited in the amount he could push and/or pull with his lower extremities, but that Plaintiff could frequently balance and occasionally engage in "climbing, stooping, kneeling, crouching, and crawling." (Tr. at 105-106.) Dr. Taggart specifically noted inconsistencies between Plaintiff's allegations of disability and his "regular" travel "back & forth" from Arizona to Utah. (Tr. at 112.) The ALJ gave "great weight" to Dr. Taggart's opinion in formulating Plaintiff's residual functional capacity. (Tr. at 24.)

As the ALJ cited in his decision, on June 5, 2004, Dr. McGirk completed a consultative examination of Plaintiff by conducting a physical examination and testing Plaintiff's range of motion and strength. (Tr. at 83-86.) Plaintiff registered 5/5 in all strength categories except his knee, which registered 4/5 due to back pain. (Tr. at 85.) Plaintiff's range of motion was "intact," other than his limitation to only extend backwards "to vertical"

- 10 -

1  and rotate only 50 percent on his left. (Tr. at 85.) Plaintiff walked with "normal gait and
2  speed without assistance," could walk on his heels and toes without difficulty, could "bend
3  90 degrees from vertical," and could "squat fully." (Tr. at 86.) Plaintiff stated that he daily
4  "makes coffee," "watches T.V.," "eats breakfast," "help[s] take care of his brother's house
5  and horses," "can drive for about two hours," and "can feed, bathe, and dress himself okay."
6  (Tr. at 84.) Dr. McGirk also noted that Plaintiff performed "light housework." (Tr. at 84.)

In his decision, the ALJ also discussed a consultation evaluation of Plaintiff's medical history performed by Dr. Bonilla on June 14, 2006, wherein Dr. Bonilla developed a pain management plan. (Tr. at 166-167.) Dr. Bonilla recommended more injections, pain medication management, and the future possibility of physical therapy and stretching. (Tr. at 166-167.) Dr. Bonilla also noted "radicular symptoms" of the left leg, such as a positive straight leg raise. (Tr. at 166.) Dr. Bonilla stated that Plaintiff should "get better hopefully" with treatment. (Tr. at 167.)

The residual functional capacity assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. See Social Security Ruling 96-8p. In addition, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. Id. SSR 96-8p provides a blueprint for what an residual functional capacity assessment must contain in all cases in which symptoms are alleged: (1) a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the ALJ's personal observations, if appropriate; (2) a resolution of any inconsistencies in the evidence as a whole; and (3) a logical explanation of the effects of symptoms, including pain, on the individual's ability to work.

Contrary to Plaintiff's assertion that the ALJ erred by failing to make a specific residual functional capacity finding regarding his ability to sit, walk, and or stand for

prolonged periods of time, the Court finds that the ALJ provided: (1) a substantial and detailed discussion of the objective medical and other evidence; (2) a resolution of possible inconsistencies in the evidence; and (3) a logical explanation of the effects of symptoms on the individual's ability to work. The ALJ properly determined Plaintiff's residual functional capacity in relation to Plaintiff's limitations in sitting and standing. (Tr. at 23-24.) The ALJ included in Plaintiff's residual functional capacity that he was limited to 1 hour of sitting and 30 minutes of standing at a time. (Tr. at 23-24.)

The Court, therefore, finds that the ALJ provided an adequate assessment of Plaintiff's limitations and a narrative discussion of how the medical evidence and other evidence of record supported his assessment of Plaintiff's residual functional capacity. The ALJ's residual functional capacity finding is supported by substantial evidence.

**E.     The ALJ's Credibility Finding**

Plaintiff alleges that the ALJ failed to properly assess his credibility. Plaintiff contends that the ALJ failed to offer any legitimate reasons for rejecting his testimony regarding pain and his ability to work.

As the Court has noted, the ALJ is responsible for determining credibility. See Magallanes, 881 F.2d at 750. When deciding whether to accept the subjective testimony of a claimant, the ALJ must perform a two-part analysis. In the first part, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. See id. at 1282. Rather, the claimant is only required to show that the impairment could reasonably have caused some degree of the symptom. See id.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes

specific findings, stating clear and convincing reasons for the rejection. See id. at 1284. In evaluating the credibility of a claimant's testimony, evidence of claimant's daily activities, type and dosage of pain medication, treatment received, and the ALJ's own recorded observations of the claimant during the hearing are all relevant as part of the ALJ's overall assessment of the claimant. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

The ALJ found objective evidence which demonstrated that Plaintiff had underlying medically determinable impairments that could reasonably cause the symptoms that Plaintiff alleged. (Tr. at 23.) The ALJ also found, however, that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. at 23.) In particular, the ALJ determined the following allegations to not be entirely credible: that Plaintiff experienced chronic and debilitating pain in his lower back which radiated to down his left leg and into his thigh; that Plaintiff experienced this pain at a level 8 out of 10; that exertional activity aggravated this pain; that Plaintiff was unable to lift more than 10 pounds occasionally, walk more than one block, stand more than 30 minutes, or sit more than one hour. (Tr. at 23.)

The ALJ identified a number of clear and convincing reasons why he did not find Plaintiff's allegations of disabling pain to be entirely credible. (Tr. at 23-24.) First, the ALJ found that Plaintiff's testimony was inconsistent with the medical opinions of Drs. Taggart, McGirk, and Bonilla. (Tr. at 24.) While a lack of medical evidence cannot form the only basis for discounting complaints of subjective symptoms it is a factor available to the ALJ in making his credibility analysis. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Second, the ALJ noted that Plaintiff's allegations of physical limitations were in conflict with Plaintiff's extensive daily activities. (Tr. at 24.) Specifically, the ALJ found that Plaintiff's daily activities indicated a greater physical ability than that testified to by Plaintiff. (Tr. at 24.) Plaintiff testified that he was responsible for feeding, dressing, cleaning up after, and putting to bed small children. (Tr. at 24, 288-292.) Plaintiff also testified that he took his children to the park, (Tr. at 24, 290), and that he vacuumed and watered the lawn by hand (Tr. at 24, 288-89). The ALJ decided that this testimony was

- 13 -

consistent with a functional report completed in 2004 in which Plaintiff reported that he could perform light housework. (Tr. at 24, 69.) The ALJ also noted Plaintiff's testimony regarding his ability to drive two hours away to visit his brother and help take care of his brother's horses and house. (Tr. at 24, 84, 292.) This testimony is inconsistent with the information that Plaintiff provided at the hearing stating that he could only sit for one hour before needing to stand up. (Tr. at 286.) Furthermore, the ALJ found that Plaintiff's testimony was inconsistent with a functional limitation report from June 14, 2006, wherein Plaintiff stated that he is able to sit continuously for two hours, stand continuously for 30 minutes, drive continuously for two hours, and walk continuously for 30 minutes. (Tr. at 24, 170.)

The Ninth Circuit has held that the daily activities of cooking, house cleaning, doing laundry, and helping to manage finances supports a finding that the individual may be capable of performing "the basic demands of competitive, remunerative, unskilled work on a sustained basis." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008). Similar to Stubbs-Danielson, the ALJ's analysis in this case reflects numerous clear and convincing reasons upon which the ALJ discredited Plaintiff's testimony of disabling symptoms including feeding his children, putting his children to bed, dressing his children, taking trips to visit his brother involving two-hour car drives, taking care of horses, doing housework, and watering the lawn.

In summary, the ALJ provided a sufficient basis to find Plaintiff's allegations not entirely credible, including: evidence of Plaintiff's daily activities and inconsistencies between Plaintiff's subjective complaints of disabling pain, his own testimony, and the greater objective medical record. While perhaps the individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations of disabling pain, each factor is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore, the Court finds no error.

## V. CONCLUSION

The Court finds that the ALJ properly concluded that Plaintiff is not disabled. Based upon the foregoing discussion,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #22) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. #24) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

DATED this 30th day of September, 2009.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge